**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| TRINITY METALS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CONVEYOR TECHNOLOGIES MANUFACTURING, INC.,<br><br>Defendant,<br><br>v.<br><br>U.S. CONVEYOR TECHNOLOGIES MANUFACTURING, INC.,<br><br>Counter Plaintiff,<br><br>v.<br><br>TRINITY METALS, LLC,<br><br>Counter Defendant. | ) | Case No. 23-cv-1149-JES-JEH |

**ORDER AND OPINION**

Plaintiff/Counter Defendant Trinity Metals, LLC ("Trinity"), is an Indiana limited liability company with its principal place of business in Indianapolis, Indiana. Defendant/Counter Plaintiff U.S. Conveyor Technologies Mfg., Inc. ("Conveyor"), is an Illinois corporation with its principal place of business in Mackinaw, Illinois. This case is before the court based on diversity jurisdiction with the amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332. Conveyor has filed a Motion to Dismiss (Doc. 14) Trinity's first amended complaint and Trinity has filed a Response and Objection. (Doc. 18). For the reasons set forth below, Defendant's Motion to Dismiss is DENIED.

**BACKGROUND**

Trinity filed its initial complaint on April 11, 2023, with Defendant Conveyor filing a counterclaim on May 5, 2023. On May 19, 2023, Plaintiff filed an amended complaint alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 et seq., seeking direct and consequential damages. Conveyor responded that Trinity cannot proceed under the ICFA as the controversy between them involves nothing more than an alleged breach of contract, the late delivery of a suitable feeder; and the contract precludes an award of consequential damages.

Although the amended complaint references two contracts between Trinity and Conveyor, Trinity did not file the contracts or other attachments. In its Response, Conveyor attached five documents to its motion, four of which are at issue here. Conveyor asserts that the documents are referenced in, and central to the amended complaint and should be considered by the Court. For reasons which will be discussed, the Court agrees and considered these documents in this Opinion. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). ("While 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim,' this is a narrow exception aimed at cases interpreting, for example, a contract.") (internal quotation omitted).

**MATERIAL FACTS**

At all relevant times, Trinity maintained a metals recycling facility which underwent upgrades in 2021. In September 2021, Trinity purchased a Chutec L XF sorting machine ("sorter #1"), manufactured by Steinert GmbH. (Doc 11 at 8). The sorter, which "uses x-ray fluorescence analysis and 3-D sensors to determine the metallic composition of … scrap metal," required certain "Ancillary Equipment" (Doc. 18 at 16). This equipment included feeders, conveyor belts,

and platforms which Trinity obtained from Conveyor, which "designs and sells Ancillary Equipment for Steinert sorting machines," and is a Steinert GmbH preferred vendor. Before purchasing sorter #1, Tyler Kruer of Trinity communicated with Chris Melenick, Conveyor Product Manager, regarding the equipment that would be needed with the sorter, including a "vibration feeder," to feed the scrap into the sorter.

On September 14, 2021, Trinity entered into a contract with Conveyor for the ancillary equipment for Chutec L XF sorter #1. Under the terms, the vibration feeder was to have been installed by January 2022. Sometime in January 2022, Trinity first learned that the vibration feeder would not work with sorter #1. In a January 31, 2022 email, Chris Melenick of Conveyor submitted to Trinity a conceptual design for a replacement "Rubber Belt Feeder" stating:

> When the proper problem [with the vibration feeder] occurred at the other customer we did our due diligence to come up with a solution.
>
> I reached out to a couple of our customers and found out that they are using a belted batch feeder to feed a Chutec/XRF machine.[1] I also talked with the installer who suggested the belted batch from seeing a XRF machine at another facility run. We have a [*sic*] built these machines in the past, the design is not untested. What we are doing is scaling the size down to fit more appropriately to the application.
>
> We understand your concern, but we feel confident on the design.

(Doc. 15-3 at 1). That same day, Melenick forwarded computer mock-ups of the feeder design, stating "[w]e should have the machine built around 6 weeks." (Doc. 15-3 at 2). While waiting for the rubber belt feeder, Trinity began operating sorter #1 using a "shaker table feeder" it self-installed, which is describes as a "stop-gap" measure. (Doc. 11 at 12).

On March 28, 2022, Conveyor told Trinity that the rubber belt feeder was nearly complete and would ship at the end of the week. Around this time, Trinity discussed its plans to purchase a

[1] It is noted that the email refers to a Chutec/XRF sorter, rather than the Chutec L XF sorter at issue here. It is unclear whether these are different machines, and neither party addresses this issue.

second Chutec L XF sorter ("sorter #2"), indicating its intent to link the two together into a "sorting line." (Doc. 11 at 13). Trinity would need additional ancillary equipment for sorter #2 but would not need an additional feeder as the sorters would be linked. In "late March 2022," Trinity bought a second Chutec L XF Sorter from Steinert (sorter #2) for $1.5 million. On March 29, 2022, Trinity entered into a second contract with Conveyor to provide ancillary equipment for sorter #2. (Doc. 11 at 14).

Trinity alleges that Conveyor was aware in March 2022, that the second sorter could not be linked with sorter#1 to form a sorting line until Conveyor had delivered a functioning feeder for sorter #1. (Doc. 11 at 14). Trinity asserts that, despite this knowledge, Conveyor "failed to disclose, during any of the parties' March 2022 discussions, the material facts that (1) its Rubber Belt Feeder had serious design flaws and had not been shown to be operational with a Steinert Chutec L XF; (2) it had failed to test, or adequately test, the Rubber Belt Feeder; and (3) it did not know whether the Rubber Belt Feeder could ever work for Sorting Machine #1." (*Id*. at 14).

Conveyor delivered the rubber belt feeder on April 6, 2022, but on April 11, 2022, before it had been commissioned, Chris Melenick called Trinity President Kruer and informed him that another Chutec L XF customer had problems with the rubber belt feeder. Melenick recommended that Trinity delay installing the feeder until Conveyor had resolved the issue. On or about April 28, 2022, Conveyor informed Trinity by email that it was sending additional parts to be installed on the rubber belt feeder. (Doc. 15-4). The rubber belt feeder was installed in July 2022, and first used on August 17, 2022, but did not prove functional. The problem was not corrected until November 11, 2022, when Conveyor delivered a slatted steel belt feeder. (Doc. 11 at 22).

Trinity asserts that Conveyor misrepresented itself and materially omitted that it did not have experience building ancillary equipment for a Chutec L XF sorter and did not take the necessary steps to understand how the equipment was to be built. (Doc. 11at 7). It specifically alleges that Conveyor violated the ICFA by:

> a. misrepresenting its abilities and knowledge related to designing the feeder that Trinity required when U.S. Conveyor promised that it could design a functioning feeder to solicit Trinity's business for the September 2021 Contract;
>
> b. failing to disclose that it had not communicated with Steinert regarding the feeding requirements for the Steinert Chutec L XF before entering into the September 2021 Contract and/or the March 2022 Contract;
>
> c. failing to disclose that it had not tested, and/or would not adequately test, the functionality of the vibration feeder before shipping it to customers in January 2022;
>
> d. failing to disclose, at the time it promised to provide one, that it did not have a functional Rubber Belt Feeder design, misrepresenting how close it was to designing a functional feeder, misrepresenting that the Rubber Belt Feeder was not an "untested design," and/or misrepresenting that the Rubber Belt Feeder would work with Sorting Machine #1 before soliciting Trinity to enter into the March 2022 Contract;
>
> e. failing to disclose that it had not tested, and would not test, the functionality of the Rubber Belt Feeder before shipping it to customers in April 2022;
>
> f. promising that it had "fixed" the Rubber Belt Feeder and that it would work "properly" in late April 2022 despite not having performed any testing, and/or failing to perform adequate tests, to ensure any "fixes" would solve the problems with the machinery that it had sold to Trinity; and
>
> g. lulling Trinity by having it install the "fixed" Rubber Belt Feeder in the spring of 2022, when it knew because of its experience with other customers that the device had not functioned properly.

(Doc. 11 at 26-27).

Trinity seeks a variety of economic damages, including the loss of the time value of money paid for the sorting machines, the depreciated value of the sorting machines,

the loss of the monetary value of the warranties on the sorting machines, the amounts paid and owing to Conveyor, costs incurred by Trinity and its employees in modifying the sorters and replacing the ancillary equipment, and loss of profit. In addition, Trinity requests punitive damages, costs, and fees.

Conveyor denies the allegations, and disputes that the ICFA applies to this case, characterizing this as a mere contract dispute. Defendant further asserts that even if the ICFA were to apply, the allegations are insufficiently pled as not stated with the same particularity as required for common law fraud. *Connick v. Suzuki Motor Co., Ltd*., 174 Ill.2d 482, 501 (1996). Conveyor claims a lack of specificity in the pleading, that Trinity has failed to identify those persons who made the allegedly fraudulent misrepresentations; failed to identify the time, place, and content of the misrepresentations; and failed to identify the method by which the misrepresentations were communicated to Trinity, facts necessary to plead fraud. *Bonilla v. Ancestry.com Operations Inc*., 574 F.Supp.3d 582, 595 (N.D. Ill. 2021).

Conveyor further claims that the alleged omissions are not actionable as they arise from a general failure to disclose rather than a direct communication; and did not induce Trinity to enter into a transaction as Trinity was already in a transaction with Conveyor under the September 14, 2021 contract. Conveyor also denies that it is liable to Trinity for consequential damages, citing the September 2021 contract which, at ¶ 9, affirmatively bars a claim for consequential damages. (Doc. 15 at 9).

As previously noted, there is an additional controversy concerning the documents attached to Conveyor's motion to dismiss: the September 2021, and March 2022 contracts; and the January 31, 2022, and April 28, 2022 emails. Trinity asks that the Court not consider the contracts, asserting that this is not a claim for breach of contract, so the contracts are not

relevant. Trinity also claims the emails are extrinsic facts that cannot be considered without converting the motion to dismiss to one for summary judgment. Fed. R. Civ. P. 12(d); *Levenstein*, 164 F. 3d at 347. The Court notes, however, that the amended complaint refers to the September 14, 2021 contract in ¶¶ 32, 33, 35, and 41, 95, 101, 106, 108, 113; and the March 29, 2022 contract in ¶¶ 60, 63, 70, 89, 95, 99, 101, 106, 108, 113. There, Trinity pleads that Conveyor used misrepresentations and omissions in its communications to induce it to enter into the two contracts and that it would not have done so, absent fraud.

The amended complaint also refers to the January 31, 2022, and April 28, 2022 emails between the parties:

> On January 31, 2022, Mr. Melenick emailed Trinity a design for a new "Rubber Belt Feeder" that he said U.S. Conveyor would deliver in place of the vibration feeder for which Trinity contracted. In that same email, U.S. Conveyor represented that the redesigned feeder would be delivered in about six weeks.
>
> That same day, in response to this email (and the January 28, 2022 phone call referenced above), Mr. Conner expressed concern that U.S. Conveyor was treating Trinity like a 'test dummy' for an "unproven design" and that . . .Trinity would need 'assurances that this new model is going to work.'

(Doc. 11 at 10).

The amended complaint also referenced Melenick's January 31, 2022 email response in which he asserted that the Conveyor had built rubber batch feeders in the past and could scale down the size to fit the Chutec L XF sorter. Trinity pled that this "was calculated to placate Trinity's reasonable concerns related to the lack of a functioning feeder and lull them into trusting U.S. Conveyor, omitted and/or misrepresented material information that would be revealed only after the Rubber Belt Feeder was delivered to Trinity and commissioned." (Doc. 11 at 11).

The amended complaint also referenced the April 28, 2022 email from Conveyor to Trinity, asserting that Conveyor had done some testing and representing that the proposed modifications would allow the rubber belt feeder to function properly. *Id*. at 17. Trinity asserted that this email omitted "material facts" as to the lack of testing or the inadequate testing of the rubber belt feed and, had it been aware, Trinity would have demanded additional testing. *Id*. at 18. Trinity pled that it suffered harm through the alleged "omissions and misrepresentations in and from the phone calls, emails, and discussions identified above . . ." *Id*. at 23.

While Trinity claims that the September 2021, and March 2022 contracts and the January 31, 2022, and April 28, 2022 emails should not be considered in a motion to dismiss, it is well established that "a district court may consider a document 'referred to in the complaint, provided it was a concededly authentic document central to the plaintiff's claim (the usual example is a contract, in a suit for breach of contract)." *U.S., ex rel. Hoffman v. Nat'l Coll.*, No. 12-237, 2013 WL 3421931, at *4 (N.D. Ind. July 8, 2013) (citing *Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002)). *See id*. (reviewing an Agreement to which the plaintiff referred in the False Claims Act complaint but objected to being considered in Defendant's motion to dismiss) ("The Agreement is central to the Relator's claim; indeed, the Agreement is, in essence, the Relator's entire claim. Further, the Relator has not contested the authenticity of the Agreement, and the Relator refers to the Agreement in his pleadings." *Id*. at *4. *See Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.")

Trinity does not contest the authenticity of the contracts or emails, having pled them in the amended complaint. In addition, the Court finds that the contracts and emails are both "critical to the complaint" and referred to in it. The Court finds, therefore, that it is appropriate to consider these documents in the motion to dismiss.

**MOTION TO DISMISS**

Defendants assert their Motion under Fed. R. Civ. P. 12(b)(6) which challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**ANALYSIS**

<u>Plaintiff Has Adequately Pled Under the ICFA</u>

The ICFA prohibits "deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact ... in the conduct of any trade or commerce." 815 ILCS 505/2. *See Rudy v. D.F. Stauffer Biscuit Co., Inc.*, No. 21-03938, 2023 WL 2711612, at *5 (N.D. Ill. Mar. 30, 2023) ("A practice is deceptive if 'it creates a likelihood of deception or has the capacity to deceive.' Courts apply a 'reasonable consumer' standard to analyze the likelihood of deception.") (internal citations omitted).

As noted, Conveyor disputes that the ICFA applies here and, even if it were otherwise, that Trinity has not adequately pled fraud. (Doc. 18 at 7) (citing *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 400 (7th Cir. 2011) (finding in an ICFA claim arising from contract, the plaintiff must go beyond pleading a breach of contract and plead "stand-alone allegation of a fraudulent act or practice."). The Court now examines whether Trinity has successfully pled "stand-alone" allegations of fraud.

As with any fraud claim, Plaintiff's ICFA claim must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Chandler v. Zinus, Inc.*, No. 20-265, 2022 WL 2104516, at *6 (S.D. Ill. June 10, 2022) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). There are four elements to an ICFA deceptive conduct claim: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury." *Avon Hardware Co. v. Ace Hardware Corp*., 998 N.E. 2d 1281, 1290 (1st Dist. 2013); *Connick v. Suzuki Motor Co., Ltd*., 675 N.E. 2d 584, 593 (1996).

There is no issue as to elements three and four as Trinity adequately pleads that the alleged deception occurred in the course of trade or commerce and proximately caused the alleged injury. As a result, the Court only examines elements one and two. In regard to the first, Trinity pleads that Conveyor engaged in deceptive acts or practices by misrepresenting its experience and ability to build a functional feeder for the Chutec L XF; giving assurances without discussing specifications with the manufacturer; shipping the rubber belt feeder without adequately testing it and knowing it would work; representing in the April 28, 2022 email that replacement parts for the rubber belt feeder would render it functional; omitting the "material

fact" that Conveyor had not adequately tested the feeder; and otherwise making unspecified material misrepresentations and omissions which induced it to buy a second sorter from Steinert and enter into a second contract with Conveyor.

In an ICFA case, the plaintiff need not establish defendant's intent to deceive, just that defendant intended that plaintiff rely on the misrepresentations. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012) ("a "claim for 'deceptive' business practices under the Consumer Fraud Act does not require proof of intent to deceive. It is enough to allege that the defendant committed a deceptive or unfair act and intended that the plaintiff rely on that act . . .") (citing *Siegel v. Shell Oil Co.,* 480 F.Supp.2d 1034, 1044 n. 5 (N.D.Ill.2007), *aff'd,* 612 F.3d 932). Here, Conveyor asserted in the January 31, 2022 email that they had a replacement feeder design which was "not untested." In the March 28, 2022 email, Conveyor asserted that the rubber belt feeder was nearly complete and would ship at the end of the week. The following day, Trinity entered into a second contract with Conveyor to provide ancillary equipment for sorter #2 which it either planned to purchase or had already purchased.

As previously noted, Trinity received the rubber belt replacement feeder on April 6, 2022, but five days later, Conveyor recommended that Trinity not install it as additional parts were needed for it to work properly or, perhaps, to work at all. On April 28, 2022, Conveyor sent Trinity another email which stated in relevant part:

> Tyler, we have gone through a couple rounds of testing and determined some modifications the [*sic*] make this machine feed properly. Next week, we will be sending you parts for two modifications. Once these are installed, myself or Nate Keller will drive over to commission/monitor/track the machines at your earliest convenience.

(Doc. 15-4). Despite the assurance that the additional parts would "make this machine feed properly," the rubber belt feeder was never functional. Trinity characterizes these

communications as misrepresentations and material omissions. *See Fleury v. Gen. Motors LLC*, No. 22-03862, 2023 WL 1450284, at *4 (N.D. Ill. Feb. 1, 2023) (considering a motion to dismiss an ICFA claim). "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information on which a buyer would be expected to rely in making a decision [regarding] whether to purchase the product." (quoting *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66, 70 (2001)).

Plaintiff has pled with sufficient particularity that Conveyor omitted material facts in its January 31, 2022 and March 28, 2022 emails. *See De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) (citing *Connick,* 675 N.E.2d 584) ("recognizing that consumer fraud may occur by concealment."). Trinity has also sufficiently pled misrepresentation in the April 28, 2022 email which stated that the suggested modifications would allow the rubber belt feeder to function properly. *Id.* (citing *Connick* and noting that pleading under the ICFA is sufficient if based on "direct statements from [defendant] that contained both misleading statements and material omissions."). This is enough of the "who, what, when, where, and how" necessary to plead fraud in this case. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co*., 631 F.3d 436, 441-42 (7th Cir. 2011) (quotation omitted).

Conveyor has offered the additional argument that not only has Trinity failed to plead deception under the ICFA, it has also failed to plead "unfair conduct" under the ICFA. *See Gustavson v. Oxford Hotels & Resorts, LLC*, No. 20-04357, 2021 WL 3801731, at *3 (N.D. Ill. Aug. 26, 2021) (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). "A plaintiff may base his or her ICFA claim on 'either deceptive conduct, unfair conduct, or both.'" Trinity, however, expressly disavows asserting an unfair conduct claim, so this issue is given no further consideration. *See* (Doc. 18 at 13 Fn. 2) ("Trinity will rely solely on

its allegations that U.S. Conveyor violated the Act [ICFA] by making misrepresentations and omissions, and not pursue a distinct claim that the conduct was 'unfair.'").

Plaintiff Has Adequately Pled A Claim For Consequential Damages

Trinity seeks damages for loss of the time value of money, depreciation, loss of the monetary value of warranties, increased expenses, and lost profits. As noted by Conveyor, these are "consequential damages," indirect losses which go beyond increased expenses or costs. (Doc. 15 at 9) (citing *Westlake Financial Group, Inc. v. CDH-Delnor Health System*, 25 N.E.3d. 3d 1166, 1174 (Ill. App. Ct. 2d Dist. 2015). The ICFA allows claims for economic damages at: *Action for actual damages*: "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper . . ." 815 ILCS 505/10a.

While the ICFA would otherwise allow consequential damages, Conveyor asserts that these are barred under the September 2021 contract. (Doc. 15 at 10). The contract at ¶ 9 states:

> LIABILITY AND CLAIMS
> NEITHER SELLER NOR ITS SUPPLIERS SHALL BE LIABLE, WHETHER IN CONTRACT OR IN TORT OR UNDER ANY OTHER LEGAL THEORY, FOR LOSS OF USE, REVENUE OR PROFICT (sic), OR FOR COST OF CAPITAL, OR OF SUBSTITUE USE OF PERFORMANCE, OR INCREASED COSTS OF OPERATION OR MAINTENANCE, OR FOR INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, OR FOR ANY OTHER LOSS OR COST OF SIMILARY TYPE. The limitation of liability contained in this section shall be effective without regard to Seller's performance or failure or delay of performance under any other term or condition of this Agreement, including those contained in any warranty.

(Doc. 15-1 at 5). In support of this position, Conveyor cites *Lefebvre*, 946 F. Supp. at 1373 (N.D. Ill. 1996), which, in an ICFA action, upheld a contract clause which precluded consequential damages.

Trinity asserts that the *Lefebvre* holding is no longer controlling as the ICFA was subsequently amended at § 505/10c to add: "[a]ny waiver or modification of the rights, provisions, or remedies of this Act will be void and unenforeceable." Trinity cites *Tortoriello v. Gerald Nissan of N. Aurora, Inc*., 379 Ill. App. 3d 214, 238 (2d Dist. 2008), where, in an ICFA action, the court determined that an arbitration clause which precluded punitive damages was unenforcable under § 505/10c:

> Section 10a(a) of the Consumer Fraud Act (815 ILCS 505/10a(a) (West 2004)) provides that the trial court "in its discretion may award actual economic damages or any other relief which the court deems proper." Such relief may include punitive damages. See *Smith v. Prime Cable of Chicago,* 276 Ill.App.3d 843, 858, 213 Ill. Dec. 304, 658 N.E.2d 1325 (1995). Section 10c of the Consumer Fraud Act (815 ILCS 505/10c (West 2004)) provides: "Any waiver or modification of the rights, provisions, or remedies of this Act shall be void and unenforceable." As an attempt to categorically exclude a form of relief authorized by the Consumer Fraud Act, the punitive damages disclaimer in the arbitration clause is void and unenforceable.

*See also Midwest Bank & Tr. Co. v. Paul H. Schwendener, Inc.*, No. 2-10-0590, 2012 WL 6965065, at *5 (Ill. App. Ct. 2d Dist. Feb. 2, 2012) (considering whether defendant waived a good faith and fair dealing defense where he raised it on appeal but had not raised it below). The court found the alleged waiver was invalid for two reasons: the duty of good faith and fair dealing "cannot be waived absent an express disavowal"; and the application of 815 ILCS 505/10(c) rendered a waiver of ICFA rights or remedies unenforceable. *Id*. The Court finds that Trinity has sufficiently supported its request for consequential damages, so the motion to dismiss is denied in this respect as well.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. 14) is DENIED in its entirety.

Entered on this 19th day of July 2023.

s/James E. Shadid
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE