IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| TRINITY METAL, LLC,<br>    Plaintiff,<br><br>v.<br><br>U.S. CONVEYOR TECHNOLOGIES MANUFACTURING, INC.,<br>    Defendant. | Case No. 1:23-cv-01149-JEH |

**Order**

Now before the Court is Trinity Metal LLC's ("Trinity") Motions to Alter Judgment and to Disburse Funds Held With the Clerk of Court and U.S. Conveyor Technologies Manufacturing, Inc.'s ("Conveyor") Motion to Alter Judgment.[1] (D. 56, 59 & 66). For the reasons stated, *infra*, Trinity's Motion to Alter Judgment, (D. 66), is DENIED, its Motion to Disburse Funds Held With the Clerk of Court, (D. 59), is GRANTED, and Conveyor's Motion to Alter Judgment, (D. 56), is GRANTED and DENIED in part.

**I**

On February 19, 2025, after a bench trial, the Court entered judgment in favor of the Defendant, Conveyor, and also found that Conveyor was entitled to judgment as a matter of law with respect to its counterclaim for breach of contract against Trinity in the amount of $74,255. *See* 02/19/2025 Text Order. On March 3, 2025, Conveyor filed a Motion to Alter Judgment. (D. 56). On March 14, 2025, Trinity filed a Response to Conveyor's Motion to Alter Judgment and Conveyor

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

filed its Reply on March 24, 2025. (D. 60 & D. 70). On March 6, 2025, Trinity filed a Motion to Disburse Funds and filed a Motion to Alter Judgment on March 18, 2025. (D. 59 & 66). Conveyor filed a Response to Trinity's Motion to Disburse Funds on March 20, 2025. (D. 68). The matters are now fully briefed.

II

Federal Rule of Civil Procedure 59 governs the "[a]ltering or [a]mending [of] a judgment." FED. R. CIV. P. 59. "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). "A Rule 59(e) motion 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence.'" *LB Credit Corp. v. Resol. Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (citing *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). If that standard is successfully established, then Rule 59(e) "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (citing *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)). However, "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citing *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Moreover, "A motion to alter or amend a judgment is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *LB Credit Corp.*, 49 F.3d at 1263 (citing *Anderson v. Flexel, Inc.*, 47 F.3d 243, 247-48 (7th Cir. 1995)). Similarly, "Rule 59 is not a vehicle for rearguing previously rejected motions" or "rehash[ing] old arguments," *Oto*, 224 F.3d at 606, nor is it a "vehicle for a party to undo its own procedural failures[.]" *Moro*, 91 F.3d at 876 (7th Cir. 1996).

A

In Conveyor's Motion to Alter Judgment, Conveyor asks the Court to add prejudgment interest in the amount of $34,116.61, to the $74,255 outstanding balance the Court previously determined Conveyor was entitled to under the March 2022 contract. (D. 56 at ECF p. 1-3). Prejudgment interest is used to "compensate[] the prevailing party for the loss of use of money during the time between the wrong and the conclusion of the litigation," *Ziaee v. West*, 916 F.2d 1204, 1208 (7th Cir. 1990). Here, Conveyor argues that under the March 2022 contract with Trinity, interest accumulates at the rate of one and a half percent per month on the unpaid balance if payment has not been made within thirty days. (D. 56 at ECF p. 2.) Conveyor claims that final payment was due on June 30, 2022, and that, "for ease of calculation, Conveyor is using August 1, 2022, as the date contractual interest began to accrue." *Id.* Conveyor also notes that it sought prejudgment interest in its counterclaim (D. 10 at ECF p. 2) and in its Motion for Summary Judgment. (D. 41 at ECF p. 19). In response, Trinity argues that because it deposited the outstanding balance of $74,255 owed under the March 2022 contract with the Clerk of Court under Rule 67, Conveyor is not entitled to prejudgment interest. (D. 60 at ECF p. 1). The Court begins by looking to the language of Rule 67, which reads:

> (a) Depositing Property. If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party--on notice to every other party and by leave of court--may deposit with the court all or part of the money or thing, whether or not that party claims any of it. The depositing party must deliver to the clerk a copy of the order permitting deposit.

> (b) Investing and Withdrawing Funds. Money paid into court under this rule must be deposited and withdrawn in accordance with 28 U.S.C. §§ 2041 and 2042 and any like statute. The money must be deposited in an interest-bearing account or invested in a court-approved, interest-bearing instrument.

FED. R. CIV. P. 67

Having reviewed Rule 67's language, the text does not appear to address the issue of prejudgment interest as Trinity contends. As a result, because this case is in diversity, the Court will look "to state law to determine whether prejudgment interest is appropriate and if so, at what rates and for what time." *FDIC v. Chi. Title Ins. Co.*, 12 F.4th 676, 686 n.8 (7th Cir. 2021). Conveyor argues that *Halloran v. Dickerson*, 679 N.E.2d 774, 778 (Ill. App. Ct. 1997) and *Telpro, Inc. v. Renello*, 1994 WL 380607, *1 (N.D. Ill. 1994), should govern this Court's inquiry. (D. 56 at ECF p. 3-4). However, *Halloran's* application is limited as that case discussed the accrual of *post-judgment interest* pursuant to Illinois statute. *Halloran*, 679 N.E.2d at 778 (emphasis added). Conveyor also relies on *Telpro*, in which the Court observed that, in Illinois "prejudgment interest is only awarded under statute or by agreement of the parties." Conveyor does not cite to any Illinois statute regarding the award of prejudgment interest, leaving the Court only to determine if the March 2022 agreement between the parties entitles Conveyor to additional interest or whether Trinity's deposit pursuant to Rule 67 affected the interest it owes under that agreement. For the reasons that follow, the Court finds the deposit does not.

On, May 19, 2023, Trinity filed a Motion to Deposit Funds with the Court in an interest-bearing account pursuant to Federal Rule of Civil Procedure 67, in the amount of $74,255, reflecting the disputed funds under the March 2022 contract "[i]n order to return U.S. Conveyor to the original *status quo* . . .." (D. 12) (emphasis in original). The Defendant, Conveyor, never filed a Response or objection to

Trinity's Motion to Deposit Funds, and, accordingly, the Court granted Trinity's Motion on June 5, 2023. (D. 16). Conveyor argues that the deposit made by Trinity under Federal Rule of Civil Procedure 67 "does not affect its obligation to pay prejudgment interest under the March 2022 Contract," (D. 56 at ECF p. 2-3), and cites to *LTV Corp. v. Gulf States Steel, Inc. of Ala.*, 969 F.2d 1050, 1063 (D.C. Cir. 1992) for that proposition. In *LTV Corp.*, the parties were in a dispute over an outstanding balance on a promissory note and the opposing party objected to the Rule 67 deposit "arguing that the market rate of interest available from an escrow account was insufficient . . .." 969 F.2d at 1054. The D.C. Circuit held that the district court abused its discretion because it had "effectively altered the terms of the contract by substituting the market rate of interest available in the escrow account for the rate to which the parties had agreed in the note." *Id.* at 1057. In so finding, the Court observed, "The Rule 67 procedure provides a place of safekeeping for disputed funds pending the resolution of a legal dispute, but it cannot be used as a means of altering the contractual relationships and legal duties of the parties." *Id.* at 1063 (citing *In re Dep't of Energy Stripper Well Exemption Litig.*, 124 F.R.D. 217, 219 (D. Kan. 1989)).

The parties do not appear to dispute that, under the express terms of the March 2022 contract, Conveyor was entitled to an interest rate of one and a half percent per month if Trinity did not pay within thirty days. *See* (D. 56 at ECF p. 2 & D. 60 at ECF p. 1-17). The March 2022 contract states, "If payments are not made in thirty (30 days), an additional 1-1/2% per month will be added to the unpaid balance due." (D. 10-1 at ECF p. 5). Conveyor argues that it is entitled to the interest under the March 2022 contract on top of the outstanding balance of $74,255. Trinity disputes this. Trinity asks the Court to rely on a series of district court cases purporting to hold that *LTV Corp.* is incorrect. Trinity principally relies on *Fulton Dental, LLC v. Bisco, Inc.*, 2016 WL 4593825, at *5 (N.D. Ill. 2016), for the proposition

5

that Rule 67 allows a "deposit . . . even if it results in substantive effects on the parties." That case, however, dealt with whether a deposit mooted the party's claim and, at any rate, was reversed by the Seventh Circuit in *Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 544-46 (7th Cir. 2017), finding Rule 67 was, "on its face," "just a procedural mechanism" that did not moot the claim. As a result, the Court declines to follow the district court's reasoning in *Bisco*.

Trinity also cites to *Kan. City S. Ry. Co. v. Borrowman*, 2009 WL 3188305, at *6 (C.D. Ill. 2009) (emphasis added), in which the Court found that a Rule 67 deposit "fulfilled [the party's] respective obligations to the Defendants *until this matter is resolved.*" In contrast, here, the Court issued no determination as to whether the deposit ultimately absolved Trinity of any potential liability and, in *Borrowman*, the Court expressly stated its obligations would be relieved "*until the matter [was] resolved.*" *Id.* (emphasis added); *see also* (D. 16). Indeed, Trinity did not appear to believe that its deposit would resolve the matter. Instead, Trinity opposed Conveyor's counterclaim, (D. 44 at ECF p. 39-43), and, in its Motion to Deposit Funds, Trinity asked the Court to offset the deposited amount against the damages it was seeking against Conveyor, effectively demonstrating that it believed Conveyor would not be able to avail itself of those funds. (D. 12 at ECF p. 2). To overcome the lack of persuasive caselaw in support of its contention, Trinity argues that awarding prejudgment interest would be inequitable and that Conveyor should be judicially estopped from seeking prejudgment interest. (D. 60 at ECF p. 1).

Trinity asserts that awarding prejudgment interest would be inequitable because there are no "communications in the record demonstrating that U.S. Conveyor ever attempted to collect the invoice [it] issued in June 2022 . . . ." (D. 60 at ECF p. 7). However, Trinity concedes that the Court's previous Order already addressed arguments surrounding payment due under the March 2022 contract as

6

the Court previously found they were "insufficient to establish that any agreement was reached to defer the final payment . . .." *Id.* To that end, it is well established that "Rule 59 is not a vehicle for rearguing previously rejected motions" or "rehash[ing] old arguments." *Oto*, 224 F.3d at 606. Even if it were true, as Trinity purports, that "Conveyor [n]ever attempted to collect the invoice [it] issued in June 2022," in Illinois, a "victim of a breach is not required to act immediately upon suspicion of a breach." *See Levin v. Grecian*, 974 F. Supp. 2d 1114, 1125 (N.D. Ill. 2013) (citing *Galesburg Clinic Ass'n v. West*, 706 N.E.2d 1035, 1037 (Ill. App. Ct. 1999)). In fact, Trinity all but concedes that no agreement to defer payment under the March 2022 contract was ever reached through its discussions with Conveyor, "Unfortunately, the discussions between Trinity and U.S. Conveyor were unable to reach a satisfactory resolution . . . which led to the filing of this action." (D. 60 at ECF p. 8). While Trinity maintains it would be inequitable to award prejudgment interest here, in another light, it would also be inequitable to hold Conveyor responsible for Trinity's delay in paying its obligations under the March 2022 contract and the contractual interest that accrued as a consequence. Rule 59 is not a "vehicle for a party to undo its own procedural failures[.]" *Moro*, 91 F.3d at 876.

Lastly, Trinity argues that Conveyor should be judicially estopped from seeking prejudgment interest because "[i]n its Rule 67 Motion, Trinity expressly informed this Court and U.S. Conveyor that it was seeking to provide the Deposited Funds to the Clerk of this Court, '[i]n order to return U.S. Conveyor to the original status quo, prior to the filing of the Complaint.'" (D. 60 at ECF p. 9). Trinity claims that, because Conveyor did not oppose the Motion to Deposit Funds, "the principles of judicial estoppel prevent U.S. Conveyor from now contesting that Trinity's Rule 67 Motion didn't return U.S. Conveyor to the status quo, prior to the filing of the Complaint." *Id*. at ECF p. 10. But despite Trinity's

7

assertion, its deposit pursuant to Rule 67 did not return Conveyor to the status quo. To the contrary, Rule 67 deposits "do not give any party an unrestricted right to remove money from the court's registry." *Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 545 (7th Cir. 2017). Under Seventh Circuit precedent, "[w]hat Rule 67 is *not* is a vehicle for determining ownership; that is what the underlying litigation is for." *Id.* at 545 (emphasis in original). Trinity acknowledged as much by opposing Trinity's counterclaim. (D. 44 at ECF p. 43). And it is undisputed that Conveyor could not unilaterally access the funds until the underlying litigation was resolved. Therefore, the deposited funds could not have actually restored Conveyor to the status quo as Trinity contends. "It is . . . inaccurate to say that the court's registry is 'an account payable to the [claimant].'" *Bisco*, 860 F.3d at 545 (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016)).

With respect to judicial estoppel in particular, it is "an equitable doctrine invoked by a court at its discretion," *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citing *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)), that "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *Id.* Here, Conveyor has not taken a contradictory position. Conveyor has sought prejudgment interest in its counterclaim and in its Motion for Summary Judgment. (D. 10 at ECF p. 2 & D. 41 at ECF p. 18). While the Court laments Conveyor's failure to raise this issue after the Court granted summary judgment on the issue in its favor, that alone is not a sufficiently contradictory position to warrant the invocation of judicial estoppel.

**B**

Having considered and dispensed with the arguments against awarding prejudgment interest to Conveyor, the Court must calculate the prejudgment

interest award Conveyor is entitled to. Since the interest is not compounded, we use the simple interest formula:

$$A = P + (P \times R \times T).$$

*A = the final amount owed; P = the principal ($74,255); R = the monthly interest rate (.015); T = the time in months (30 months).*

The final invoice was sent to Trinity on June 30, 2022. (D. 41-3 at ECF p. 19). Interest began to accrue one month later, at the beginning of August 2022, through the end of January 2025, which is 30 months.[2] Accordingly, the Court amends the judgment of its previous Order, (D. 54 at ECF p. 15), and finds that Conveyor is entitled to $33,414.75 in prejudgment interest in addition to the $74,255 it is owed on the outstanding balance of its counterclaim against Trinity pursuant to the March 2022 contract, totaling $107,669.75.[3] *See* FED. R. CIV. P. 59. Trinity is entitled to use the interest it earned on its Rule 67 deposit to offset the judgment Trinity owes to Conveyor. *Ziaee*, 916 F.2d at 1209 ("Interest earned on these funds will be credited against the judgment.").

C

In Trinity's Motion to Alter Judgment, it asks the Court to reconsider its Order, (D. 54 at ECF p. 1), after a bench trial finding that Trinity had not proven its case by a preponderance of the evidence. As previously discussed, the Court applies the governing standard of Federal Rule of Civil Procedure 59(e) in considering Trinity's Motion. FED. R. CIV. P. 59(e). Trinity's Motion to Alter

---

[2] "For ease of calculation, Conveyor is using August 1, 2022, as the date contractual interest began to accrue." (D. 56 at ECF p. 2).
[3] Conveyor claims that, in addition to the month of January, it deserves an apportioned amount for the month of February. (D. 56 at ECF p. 2). However, the March 2022 contract's language adds interest at a rate of one and a half percent *"per month,"* not per diem. (D. 10-1 at ECF p. 5) (emphasis added). Accordingly, the Court declines to award apportioned interest for the month of February and DENIES, in part, that portion of Conveyor's Motion to Alter Judgment.

Judgment attempts to primarily advance three arguments: (1) that Conveyor's omissions were material, (2) that Conveyor intended to induce Trinity's reliance, and (3) that Conveyor's omissions proximately caused Trinity's damages. However, for Trinity to prevail on its Motion, it "must present either newly discovered evidence or establish a manifest error of law or fact." *Oto*, 224 F.3d at 607 (7th Cir. 2000). It is well established that "Rule 59 is not a vehicle for rearguing previously rejected motions" or "rehash[ing] old arguments." *Oto*, 224 F.3d at 606. Because Trinity's Motion to Alter Judgment largely amounts to a rehashing of old arguments previously considered and rejected by the Court in reaching its verdict after a bench trial on the same issues, Trinity's Motion is DENIED.

#### i

Trinity's first argument, that Conveyor's omissions were material, is an attempt to re-litigate the decision this Court reached as to that issue. Trinity states that the "'deceptive act' element of the ICFA was decided before trial," but that is incorrect. (D. 66 at ECF p. 4). The Court's previous Order, (D. 50 at ECF p. 29) (emphasis added), clearly states that there remains a contestable issue as to "whether Conveyor's January, March, and April 2022 emails *omitted material facts in violation of the ICFA*." Trinity does not attempt to introduce new evidence on this issue and instead recounts the same facts that have already been litigated and asks the Court to revisit the same "undisputed evidence." (D. 66 at ECF p. 3-5). The Court declines to do so.

#### ii

Next, Trinity asserts in its Motion to Alter Judgment that the "post-trial Order did not, include any finding of fact" as to "whether Conveyor *intended* that Trinity rely on th[e] omissions." (D. 66 at ECF p. 6) (emphasis added). Trinity also asserts that the Court's Summary Judgment Order "established" the intent element "as the law of the case." As to these points, the Court disagrees and is

10

unmoved. Trinity's assertion that the intent element was established as the law of the case is plainly belied by the conclusion of the Court's Order which found that there was a triable issue as to "whether Conveyor intended that Trinity rely on those omissions[.]" (D. 50 at ECF p. 29). While Trinity places a great deal of significance on whether the Court's Order included a finding of fact as to Conveyor's intent, that issue is ultimately of little consequence; the Court's Order focused on the lack of credible evidence from Trinity regarding materiality and causation, both of which are elements that are necessary for Trinity to prove its case. *See Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 960 (7th Cir. 2020) (citing *De Bouse v. Bayer*, 922 N.E.2d 309, 313 (Ill. 2009)). A failure by Trinity to prove any element of its ICFA claim, as the Court's Order found, is fatal to it. (D. 54 at ECF p. 10).

Trinity also asks the Court to revisit other facts found in its Order, namely, that the Court observed "Conveyor could have refused to undertake an alternative design in light of Trinity's request that it not be a 'test dummy' and simply delivered the feeder it fabricated in performance of its contractual obligation" and that the Court found credible the "testimony suggesting the magnetic feeder was also untested." (D. 66 at ECF p. 10). Trinity asserts that these facts are irrelevant under the ICFA. *Id.* (citing cases for the proposition that, under the ICFA, innocent material omissions are actionable, and that the good faith or bad faith of the actor is irrelevant under the ICFA). However, as to the observation that Conveyor could have refused to undertake an alternative design, that is a part of the background section of the Court's Order, not the analysis. Second, to the extent the Court considered "testimony suggesting the magnetic feeder was also untested," that fact went to the Court's discussion of the materiality element and whether Trinity would have acted differently, not intent, and that testimony is just part of a larger set of facts found by the Court in reaching its decision. At bottom, Trinity does not

11

present newly discovered evidence but attempts to re-litigate facts and arguments already considered by the Court during the bench trial as to Conveyor's intent.

### iii

Lastly, Trinity contends that the Court should have found that Conveyor's alleged material omissions proximately caused Trinity's damages and that the Court did not address the issue of proximate cause. (D. 66 at ECF p. 11-16). On this issue, the Court also disagrees. As Trinity points out in its Motion to Alter Judgment, (D. 66 at ECF p. 13), the Court's Order found that "[t]here was not sufficient evidence to demonstrate that Trinity was relying on Conveyor's representations with respect to resolving the feeder issues under the first contract in deciding whether to move forward with a separate contract to purchase an additional Chutec" and that "the Court did not find the witness testimony indicating that Trinity's purchase was induced in reliance on Conveyor's alleged omission, or that it would have acted differently had it known about Mr. Wall's recommendation, to be credible." (D. 54 at ECF p. 13-14). Trinity states the "issue was not just *whether* Trinity would move forward with its purchases of the second Chutec and its Ancillary Equipment, but *when* it would do so." (D. 66 at ECF p. 13) (citing no cases in support) (emphasis in original). Trinity's argument is a distinction without a difference. If, as the Court found, there was insufficient evidence to conclude that Trinity was relying on Conveyor in deciding to make the purchase, then the same is true as to its temporality—the two facts are inextricably linked. Finally, Trinity asserts that it was error for the Court to question the reasonableness of Trinity to "move forward with the purchase of a second Chutec and hold Conveyor responsible for any subsequent snafus Trinity encountered." (D. 66 at ECF p. 15). However, that statement reflects a credibility determination regarding Trinity's hasty disposition and the Court's finding that the alleged omissions were immaterial, in part, because Trinity would not have

acted differently. The Court's decision did not rest on the reasonableness of the Defendant's alleged reliance. Therefore, the Court finds Trinity's argument unpersuasive.

### iv

Trinity has not demonstrated that the Court committed a manifest error of law or fact or introduced any new evidence. *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 607 (7th Cir. 2000). A "manifest error" is "not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto*, 224 F.3d at 606 (7th Cir. 2000). Accordingly, Trinity's Motion to Alter Judgment, (D. 66), is DENIED.

### III

For the reasons stated, *supra*, Trinity's Motion to Alter Judgment, (D. 66), is DENIED, its Motion to Disburse Funds Held With the Clerk of Court, (D. 59), is GRANTED, and Conveyor's Motion to Alter Judgment, (D. 56), is GRANTED and DENIED in part. The Court hereby AMENDS its previous judgment, (D. 54 at ECF p. 15), with respect to Conveyor's award on its counterclaim from $74,255, to include prejudgment interest in the amount of $33,414.75, totaling $107,669.75. The Clerk is to maintain this case as CLOSED and to release the funds deposited by Trinity with the Clerk of Court, along with any accrued interest therein, to be credited against the judgment. (D. 12 & 59).

*It is so ordered.*

Entered on April 1, 2025

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE